## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARTIN L. JONES** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  10-4194** |
| | : | |
| **MICHAEL J. ASTRUE** | : | |
| **Commissioner of** | : | |
| **Social Security** | : | |

### MEMORANDUM OPINION

**Savage, J.**                                                          **July 10, 2012**

After this social security case was remanded to the Commissioner of Social Security

(the "Commissioner") pursuant to the fourth sentence of 42 U.S.C. § 405(g),[1] the plaintiff

Martin L. Jones moved for attorney's fees under the Equal Access to Justice Act ("EAJA").[2]

The Commissioner opposed the motion, arguing that the government's decision to deny

benefits and its subsequent position in this litigation was "substantially justified."  We agree

with Jones that the government's position was not substantially justified because it violated

binding circuit precedent.  Thus, we shall grant his motion and award him attorney's fees.

Jones brought this action under 42 U.S.C. § 405(g) seeking judicial review of the

Commissioner's decision denying his application for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI").  Magistrate Judge David Strawbridge issued

a Report and Recommendation ("R&R") on November 30, 2011 recommending that we

vacate the Commissioner's decision and remand the matter to the Commissioner for

---

[1] See Order, Dec. 19, 2011, Doc. No. 18.

[2] See Pl.'s Mot. Atty's Fees 1, Mar. 10, 2012, Doc. No. 20.  Although the EAJA entitles the prevailing party to attorney's fees and expenses, 28 U.S.C. § 2412(b) (2006), Martin seeks only attorney's fees in his motion.

further proceedings.[3]   Judge Strawbridge determined that remand was appropriate because the administrative law judge ("ALJ") had failed to acknowledge that Jones's close proximity to age fifty-five created a "borderline situation" for determining whether he was disabled using the Medical-Vocational Guidelines, known as "the grids."[4]   The Commissioner filed no objections to the R&R.  After an independent review of the record, we issued an order adopting the R&R and remanding the case.

## Background

On February 16, 2007, Jones applied for DIB under Title II of the Social Security Act (the "Act") and SSI under Title XVI.  He alleged that he had been disabled since June 15, 2003.[5]  After his application was denied, Jones timely requested a hearing before an ALJ. At the hearing, which was held on August 1, 2008, the ALJ and Jones's attorney solicited testimony from Jones and vocational expert ("VE") Nancy Hartner.[6]  On October 14, 2008, the ALJ issued a decision denying Jones's application on the grounds that Jones was not disabled under the Act.[7]

Disability, under the Social Security Act, is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not

---

[3]  *See* Report and Recommendations ("R&R") 2, Nov. 30, 2011, Doc. No. 17.

[4]  *Id.* at 11-12.

[5]  Jones later amended this date to September 1, 2005.  *See* R. at 13, 26, Doc. No. 15-2.

[6]  R. at 31-60.

[7]  R. at 13.

less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the ALJ must conduct the familiar five-step inquiry prescribed in the Social Security regulations.  *See* 20 C.F.R. §§ 404.1520, 416.920 (West. 2012); *Rutherford v. Barnhart*, 399 F.3d 546, 551-52 (3d Cir. 2005); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).[8]  In the first four steps, the burden is on the claimant to make a prima facie case that he is unable to perform his past work.  *Rutherford*, 399 F.3d at 551.  At step one, the claimant must demonstrate that she is not engaged in gainful employment.  *Id.*  At step two, the claimant must show that she has a medically severe impairment or a combination of impairments.  *Id.* At the third step, the ALJ determines whether the claimant's impairment or impairments are equal to one of the impairments listed in an appendix to the social security regulations.[9]  The Commissioner has decided that those impairments listed are so severe that they conclusively render a claimant disabled.  *See Plummer*, 186 F.3d at 428.  Thus, if the claimant meets his burden at step three, he is *per se* disabled and the inquiry ends.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Rutherford*, 399 F.3d at 551.  If the claimant's impairment does not equal one of the listed impairments, the inquiry proceeds to step four where the claimant must show that the impairment prevents him from performing his past relevant work.  *Rutherford*, 399 F.3d at 551.  Once the claimant has established that he cannot return to his previous work, the inquiry moves to the fifth step. *Id.*  There, the burden shifts to the Commissioner to show that "other jobs exist in

---

[8] Part 404 of Title 20 governs Jones's application for SSI under Title II of the Act.  *See* 20 C.F.R. § 404.1.  Part 416 governs his application for DIB under Title XVI.  *See id.* at 416.901.  The language at §§ 404.1520 and 416.920 is identical in all relevant respects.  Thus, we consider case law interpreting both parts. *Cf. Rutherford*, 399 F.3d at 551 n.3.

[9] *See* 20 C.F.R. Pt. 404, Subpt. P, Appx. 1.

3

significant numbers in the national economy that the claimant could perform." *Id.* (citation omitted); *see also Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir. 1985) (citing 42 U.S.C. § 423(d)(2)(A) (1982)); *Rossi v. Califano*, 602 F.2d 55, 58 (3d Cir. 1979)). If the Commissioner meets that burden, the ALJ must find that the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ found that Jones made his prima facie case in steps one, two and four. He determined that although Jones had sufficient residual functional capacity to perform "light work," his impairments prohibited him from returning to his previous work in construction.[10]   The ALJ then proceeded to the fifth step to consider whether Jones could perform a significant number of other jobs in the national economy.

To assist the ALJ's analysis at step five, the Social Security Administration ("SSA") promulgated the Medical-Vocational Guidelines, commonly referred to as "the grids." *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 2;[11] *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000); *Kane*, 776 F.2d at 1132; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007).   The grids are shortcuts.   Where a rule adequately accounts for the claimant's barriers to performing new work, the rule saves the ALJ from having to determine anew in every case how many jobs are available to someone like the claimant.   *See Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983).   However, the grids were not intended to govern all cases.   *See id.* at 462 n.5; *Santise v. Schweiker*, 676 F.2d 925, 934-35 (3d Cir. 1982). Where no rule adequately considers the claimant's vocational limitations, a more

---

[10] R. at 21.

[11] Both the Part 404 and Part 416 regulations refer to the grids in appendix 2 of Part 404, Subpart P. *See, e.g.*, 20 C.F.R. §§ 404.1563(a), 416.963(a).

individualized determination of the claimant's abilities is required.  *See Sykes*, 228 F.3d at 266; *Kane*, 776 F.2d at 1133; *Santise*, 676 F.2d at 934-35.  In those cases, the ALJ may need to solicit testimony from a VE regarding how many jobs the claimant could perform given his specific limitations.  *See Sykes*, 228 F.3d at 269-70 (discussing *Campbell*, 461 U.S. at 467); *see also Hoopai*, 499 F.3d at 1075 (citing *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)); *Butts v. Barnhart*, 388 F.3d 377, 383-84 (2d Cir. 2004).[12]

The grids consist of matrices of four "vocational factors"–physical ability, age, education and work experience–"and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy."  *Sykes*, 228 F.3d at 263; *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting *Campbell*, 461 U.S. at 461-62 (internal quotations omitted)).  Each factor contains several categories, and the ALJ must determine which category best describes the claimant.  *See* 20 C.F.R. § 404.1560-68.[13]  Based on those determinations, the grid rules produce a finding of disabled or not disabled.  *See id.* at Part 404, Subpart P, Appendix 2.

To apply the age factor, the ALJ must place the claimant in one of three categories: "younger person" (under age fifty); "person closely approaching advanced age" (ages fifty to fifty-four); or "person of advanced age" (fifty-five and older).  20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e).  What differentiates the three categories is the degree to which a claimant's age is presumed to affect his ability to adjust to other work.  *Id.* at §§

---

[12] The ALJ also typically elicits VE testimony regarding the claimant's ability to return to past work at step four.  *See Smith v. Cmm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).

[13] For example, the education factor includes the categories "illiteracy," "marginal education," "limited education," and "high school education and above."  *Id.* at § 404.1564(b)(1)-(4).

404.1563(a), 416.963(a); *Daniels*, 154 F.3d at 1136; *Kane*, 776 F.2d at 1134.   For a younger person, the Commissioner generally does not consider age to seriously impair the claimant's ability to adjust.   20 C.F.R. §§ 404.1563(c), 416.963(c).   For a person closely approaching advanced age, age may "seriously" affect the claimant's ability to adjust.   *Id.* at §§ 404.1563(d), 416.963(d).   For a person of advanced age, it may "significantly" affect his ability to adjust.   *Id.* at §§ 404.1563(e), 416.963(e).   Consequently, the claimant's age category will have a bearing on where he falls within the grids, which can make the difference between a finding of disability or no disability.

As stated in 20 C.F.R. §§ 404.1563(b) and 416.963(b), the SSA "will not apply the age categories mechanically in a borderline situation."   The regulation defines a borderline situation as one where the claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled."   20 C.F.R. §§ 404.1563(b), 416.963(b).   Where a borderline situation exists, the SSA "will consider whether to use the older age category after evaluating the overall impact of all the factors" in the claimant's case.   *Id.* at §§ 404.1563(b), 416.963(b).

Here, the ALJ evaluated Jones's vocational factors and determined that Jones was able to perform light work, at fifty-four years old was a "person closely approaching advanced age," had a ninth grade education, was able to read and write English, and did not have transferrable job skills.[14]   These determinations placed Jones under grid rule

---

[14] R. at 21.

6

202.10, which dictated a finding of not disabled.[15]  Therefore, after considering the VE's opinion, the ALJ concluded that Jones was "able to engage in occupations with significant numbers of jobs in the regional and national economies."[16]

Jones sought review of the ALJ's decision from the SSA's Appeals Council on November 12, 2008.  The Appeals Council denied the request on June 21, 2010, rendering the ALJ's decision the final decision of the Commissioner.  *See Sims v. Apfel*, 530 U.S. 103, 107 (2000) (citations omitted).

Jones then filed this action under 42 U.S.C. § 405(g) (2006), seeking review of the Commissioner's final decision on an application for Social Security benefits.  Jones alleged that the ALJ committed three errors in denying his application: 1) rejecting the opinion of Jones's treating physician without providing adequate justification; 2) categorizing him as a "person closely approaching advanced age" based on his chronological age of fifty-four without considering that he was only two weeks away from his fifty-fifth birthday; and 3) discounting Jones's credibility without citing specific reasons for doing so.

The second alleged error is at issue here.  Relying on the Third Circuit's holding in *Kane v. Heckler*, Jones argued that the ALJ erred by failing to explicitly consider that his proximity to age fifty-five created a "borderline situation" for applying the grids' age factor.  In *Kane*, the Third Circuit held that the regulations require the ALJ to explicitly acknowledge

---

[15] *Id.*

[16] *Id.* at 13, 22.

a borderline situation and to determine which age category best describes the claimant's ability to adjust to new work. 776 F.2d at 1132-34.[17]

It is undisputed that if the ALJ had placed Jones in the higher category of "person of advanced age," the grids would have directed a finding of disabled. However, despite Jones's proximity to age fifty-five, the ALJ's decision neither referred to a "borderline situation" nor cited §§ 404.1563(b) or 416.963(b). The decision did not consider which age category best described Jones's ability to adjust to new work, but stated only that he was "a person closely approaching advanced age" based on his chronological age.[18]

In this court, the Commissioner denied that the ALJ made any error warranting reversal or remand. He offered two related arguments. First, he argued that the ALJ satisfied *Kane*, which required that he not apply the grids mechanically but rather give Jones an "individualized determination" of his ability to transition to new work, by eliciting testimony from the VE about the number of jobs someone like Jones would be able to do. Second, he argued that, in accordance with SSA regulations, the ALJ evaluated all of Jones's vocational factors and correctly determined that nothing in the record warranted applying the higher age category. To support this point, the Commissioner relied on the SSA's Hearings, Appeals and Litigation Law Manual ("HALLEX"), which was issued by SSA's Office of Hearings and Appeals. HALLEX provides that, "[a]bsent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use

---

[17] When *Kane* was decided, the borderline situation language was codified at §§ 404.1563(a), 416.963(a). *See* 20 CFR §§ 404.1563(a), 416.963(a) (1985). In 2000, the SSA moved that language to paragraph (b) in both §§ 404.1563 and 416.963. *See* Rules and Regulations, Social Security Administration, 65 Fed. Reg. 17,994, 17,995 (Apr. 6, 2000).

[18] R. at 21.

the claimant's chronological age—even when the time period is only a few days." HALLEX, Application of the Medical-Vocational Guidelines in Borderline Age Situations, II-5-3-2, 2003 WL 25498826 (2003). The manual places the burden on the claimant to show that he suffers from vocational adversities sufficient to justify use of the higher age category. *Id.*[19] It states that "[t]he adjudicator need not explain his or her use of the claimant's chronological age." *Id.* The Commissioner maintains that the ALJ's duty to analyze a borderline situation is satisfied if the administrative record contains sufficient evidence to justify use of the claimant's chronological age. Hence, in his view, explicit recognition of a borderline situation is not required.

The magistrate judge issued an R&R recommending remand to the Commissioner for further proceedings. He determined that the ALJ "erred by not acknowledging that Plaintiff's situation was 'borderline' and providing a rationale for his apparent determination that that status had no relevance to the discussion."[20] Following *Kane*, the magistrate judge determined that Jones's proximity to age fifty-five at the time of the ALJ's decision presented a borderline situation.[21] The magistrate judge then noted that §§ 404.1563(b) and 416.963(b) require the Commissioner to consider the use of the higher age category in such situations.[22] He concluded that the ALJ was at least required to address the

---

[19] HALLEX uses a "sliding scale" approach; the further the claimant's chronological age is from the higher age category, the more adversity the claimant must show. *Id.*

[20] R&R at 11.

[21] *Id.* at 8-11.

[22] *Id.* at 11-12.

application of §§ 404.1563(b) and 416.963(b) to Jones's case and explain why he used the lower age category.[23]

The magistrate judge rejected the Commissioner's argument that the ALJ adequately considered Jones's ability to adapt to new work by soliciting testimony from the VE.[24] He noted that the ALJ never addressed the existence of a borderline situation during his colloquy with the VE, but instead asked the VE to assume at all times that Jones was categorized as a person closely approaching advanced age.[25] The magistrate judge also held that HALLEX did not relieve the ALJ from explicitly recognizing the borderline situation as required by *Kane* because HALLEX is not legally binding.[26]

## Legal Standard

A prevailing party in an action against the government is entitled to attorney's fees and expenses under the EAJA where the government's position was not "substantially justified" and no "special circumstances" make an award unjust. *See Williams v. Astrue*, 600 F.3d 299, 301 (3d Cir. 2009) (quoting 28 U.S.C. § 2412(d)(1)(A)); *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009) (citations omitted).

---

[23] *Id.*

[24] *Id.* at 11.

[25] *Id.*

[26] *Id.* at 12 n.7.  The magistrate judge determined that the ALJ's other two alleged errors–rejecting the opinion of Jones's treating physician and discounting Jones's credibility–did not independently warrant remand.  *Id.* at 19, 23.  However, because he had already decided that remand was appropriate based on Jones's "borderline situation" claim, the ALJ recommended that the ALJ give further consideration to some of Jones's objections on remand.  *Id.*

The EAJA fee-shifting provision is not a "winner-takes-all" scheme.  Winning the case does not automatically entitle the winner to an award.  *See Williams*, 600 F.3d at 302.  If the government's position was substantially justified, the winner will not recover attorney's fees.  The government bears the burden of demonstrating that its position was substantially justified.  *Scarborough v. Principi*, 541 U.S. 401, 414-15 (2004) (citations omitted); *Williams*, 600 F.3d at 302.  Absent this showing, the prevailing party will recover.

What constitutes substantial justification is not defined in the EAJA.  It has been judicially defined as "a reasonable basis in both law and fact."  *Williams*, 600 F.3d at 302 (quoting *Hanover Potato Prods., Inc. v. Shalala*, 989 F.3d 123, 127 (3d Cir. 1993)).  As intended by Congress, the EAJA fee-shifting scheme is aimed at discouraging the government from unreasonably using its regulatory authority and sizeable litigation resources to deter private parties from vindicating their rights.  *Comm'r, INS. v. Jean*, 496 U.S. 154, 163-65 (citations omitted); *Morgan v. Perry*, 142 F.3d 670, 683 (3d Cir. 1998) (quoting *Pierce v. Underwood*, 487 U.S. 552, 575 (1988) (Brennan, J., concurring in part and concurring in the judgment)).  The "substantial justification" standard lies between an automatic award of attorney's fees for prevailing and an award only when the government's position was frivolous.  *Washington v. Heckler*, 756 F.2d 959, 961 (3d Cir. 1985) (quoting *Dougherty v. Lehman*, 711 F.2d 555, 563 n.12 (3d Cir. 1983)); *see also Clark v. Astrue*, 793 F. Supp.2d 726, 729 (E.D. Pa. 2011) (citations omitted).

The Commissioner's "position" consists of "both his pre-litigation conduct, including the ALJ's decision itself, and his litigation position" in the § 405(g) proceeding in federal court.  *Stewart*, 561 F.3d at 683 (citations omitted); *see also Williams*, 600 F.3d at 302; *Taylor v. Heckler*, 835 F.2d 1037, 1042 n.14 (3d Cir. 1988).  Although the Commissioner's

position typically encompasses a variety of claims and actions at several stages, we do not decide piecemeal whether it was substantially justified. *See Jean*, 496 U.S. at 158-59. Rather, we make a single global determination "from the totality of the circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation." *Williams*, 600 F.3d at 302 (quoting *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1999)); *see also United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000). Both the ALJ's decision and the government's litigation position must be substantially justified. *Taylor*, 835 F.2d at 1040 ("[T]he government is thus deemed to have two positions for EAJA purposes, both of which must be 'substantially justified.'" (quoting *Lee v. Johnson*, 801 F.2d 115, 116 (3d Cir. 1986) (Becker, J., dissenting from denial of petition for rehearing en banc) (internal alterations omitted))); *see also Johnson v. Gonzales*, 416 F.3d 205, 210 (3d Cir. 2005) (In an immigration case, to avoid fees under the EAJA, "[t]he government must meet the substantially justified test twice–once with regard to the underlying agency action and again with regard to its litigation position in the proceedings arising from that action." (citing *Kiareldeen v. Ashcroft*, 273 F.3d 542, 554 (3d Cir. 2001))). If either the ALJ's decision or the Commissioner's litigation position is not substantially justified, the prevailing party is entitled to an award of fees and costs under the EAJA. *Taylor*, 835 F.2d at 1040.

There is no question that Jones is a prevailing party. Having succeeded in obtaining a remand under sentence four of 42 U.S.C. § 405(g),[27] Jones has prevailing party status

---

[27] Sentence four empowers the district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

under the EAJA.  *Shalala v. Schaefer*, 509 U.S. 292, 300 (1993) ("No holding of this Court has ever denied prevailing-party status (under § 2412(d)(1)(B)) to a plaintiff who won a remand order pursuant to sentence four of § 405(g)."); *see also Johnson*, 416 F.3d at 209 (interpreting *Schaefer*).  The Commissioner does not contend that "special circumstances" would make an award unjust.  He argues only that his position both before and during the litigation was "substantially justified."

## Discussion

No one questions that Jones, being only two weeks from his fifty-fifth birthday, presented a borderline age situation.  As defined by the SSA, a borderline situation exists when the claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled . . . ."  20 C.F.R. §§ 404.1563(a), 416.963(a).  The Third Circuit has held that forty-eight days constitutes a borderline situation.  *Kane*, 776 F.2d 1132-33.  Two weeks certainly falls within the range of "a few days to a few months."  Thus, the issue before us is whether the Commissioner was substantially justified in relying on the ALJ who failed to explicitly identify and analyze Jones's borderline situation.

### Third Circuit Precedent

The Third Circuit in *Kane* was the first court of appeals to consider how an ALJ must address a borderline situation in a decision.  The ALJ in *Kane* had determined that grid rule 202.10–the same rule that the ALJ in this case applied to Jones–applied to Kane based on his ability to perform "light work," limited education and age of fifty-four.  776 F.2d at 1132.  Applying that rule, the ALJ concluded that Kane was not disabled under the grids.

*Id.*  In his decision, the ALJ did not mention that Kane was only forty-eight days from his fifty-fifth birthday, and he did not address 20 C.F.R. § 404.1563.[28]  *Id.* at 1132-33.

The Third Circuit determined that Kane's age created a borderline situation.  It noted that Kane was only forty-eight days from his fifty-fifth birthday and that "[t]he choice of an age category had a decisive impact on the disability determination."  *Id.* at 1133.  If the ALJ had placed him in the higher "advanced age" category and found that his previous work skills were non-transferrable,[29] Kane would have been disabled under the grids.  *Id.* at 1133.  The court then determined how the ALJ should have addressed the borderline situation in his decision.

Relying on the Supreme Court's decision in *Heckler v. Campbell*, the *Kane* court explained that § 404.1563(a)—now §404.1563(b)[30]—provided crucial assurance that the SSA would not rigidly apply a grids age category which did not accurately describe the claimant's ability to adjust to new work.  *Id.* at 1133-34 (quoting *Campbell*, 461 U.S. at 462 n.5, 467).  The court stated that this built-in flexibility helped prevent the grids from producing arbitrary results and ensured that the SSA met the Act's requirement that claimants receive an "individualized determination."  *Id.* at 1134.  ("[J]udicial approval of these standards is premised on the assurance that SSA will not employ them to produce arbitrary results in individual cases.").

---

[28] *Kane* only considered an application for DIB under Title II of the Act.  No application for SSI under Title XVI was at issue.  Thus, the court addressed only the Part 404 regulations and not Part 416.  *Kane's* reasoning applies equally to § 404.1563(b) & § 416.963(b) because the relevant language in both sections is identical.  *See supra* note  8.

[29] Because the ALJ placed Kane in a lower age category and thereby determined that he was not disabled, the ALJ did not make any findings regarding the transferability of Kane's abilities.  *Id.*

[30] *See supra* note 17.

14

The *Kane* court concluded that where a borderline situation exists, the regulations require the ALJ to make an individualized determination of the claimant's ability to adjust to new work by considering which of the age categories better describes the claimant. *Id.* at 1134. When the claimant's age presents a borderline situation between "closely approaching advanced age" and "advanced age," the ALJ must determine whether the claimant's age merely "seriously" affects his ability to adjust to new work, or whether it "significantly" affects his ability to adjust. *Id.* That determination can make the difference between a finding of disability or no disability.

### The ALJ's Decision

The ALJ was required to follow binding Third Circuit precedent governing the analysis of a borderline age situation. *See Washington*, 756 F.2d at 962 ("When the government's legal position clearly offends established precedent, however, its position cannot be said to be 'substantially justified.'"); *see also Grossberg v. Barnhart*, No. 04-2397, 2005 WL 703736, at*2 (3d Cir. Mar. 29, 2005) (holding that the ALJ's decision was not substantially justified because it violated the Third Circuit's holding in *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000)); *Commodity Futures Trading Comm'n v. Dunn*, 169 F.3d 785, 787 (2d Cir. 1999) (holding that the ALJ's decision was not substantially justified because it violated settled circuit precedent). *Kane* required the ALJ to acknowledge the claimant's borderline age and, pursuant to 20 C.F.R. §§ 404.1563 and 416.963, determine which age category–"advanced age" or "closely approaching advanced age"–better described Jones's ability to adapt to new work. *Kane*, 776 F.2d at 1134. Instead, the ALJ here did exactly what the ALJ in *Kane* did–he simply recited the claimant's vocational factors, including his chronological age of fifty-four, and applied grid rule 202.10. He gave no explicit

consideration to the borderline age component.  Thus, the ALJ's decision was not substantially justified.

As the magistrate judge recognized, the ALJ's compliance with HALLEX did not permit him to ignore *Kane*.  HALLEX provides the SSA Appeals Council's interpretations of various formal Social Security regulations codified in the Code of Federal Regulations ("C.F.R.").  Chapter II-5-3-2 of HALLEX, titled "Application of the Medical-Vocational Guidelines in Borderline Age Situations" interprets §§ 404.1563 and 416.963 and instructs ALJs how to address a borderline age situation.  *See* 2003 WL 25498826.  Contrary to *Kane's* clear instructions, HALLEX does not require the ALJ to explicitly address §§ 404.1563(b) or 416.963(b) by determining which age category most accurately describes the claimant's ability to adjust to new work.  Rather, it states that the ALJ need not provide any explanation for his or her use of the claimant's chronological age, even if the claimant is only a few days from the next category.  *Id.*  According to HALLEX, §§ 404.1563 and 416.963 grant the ALJ discretion to review the record as a whole and decide whether additional "vocational adversities" that did not determine the outcome under the grid rules justify using a higher age category.  *Id.*  HALLEX states that the Appeals Council generally will only review an ALJ's unexplained decision to use the claimant's chronological age in a borderline situation where the record as a whole justifies use of the higher age category. *Id.*

Given *Kane*, reliance on HALLEX is not justified.  HALLEX is not a formal regulation that carries the force of law.  *See Lockwood v. Cmm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010) (citing *Clark v. Astrue*, 529 F.3d 1211, 1216 (9th Cir. 2008)); *see also Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) (citing *Schweiker v.*

16

*Hansen*, 450 U.S. 785, 789 (1981)).  It is an internal guidance manual that does not bind the courts.  *See Lockwood*, 616 F.3d at 1072 (citing *Clark*, 529 F.3d at 1216); *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000) (citing *Schweiker*, 450 U.S. at 789); *see also Bordes*, 235 F. App'x at 859.  As such, HALLEX's interpretation of the C.F.R. cannot overrule the Third Circuit's interpretation.  Thus, the ALJ was not substantially justified in relying on HALLEX in direct contradiction of binding Third Circuit precedent.  Jones is therefore entitled to an EAJA fees award.

That the magistrate judge recommended remand based on only one of three alleged errors does not affect our decision.  Whether the government's position was substantially justified is determined by looking at "the totality of the circumstances" surrounding the ALJ's decision or the government's litigation position.  *Williams*, 600 F.3d at 302.  It is a qualitative, not quantitative, analysis.  We do not base our decision on the number of issues won and lost by each party.  *See Stewart*, 561 F.3d at 683-84.  The claimant need not prevail on every issue to be awarded fees.  On the other hand, he is not entitled to fees simply because he prevailed on a single issue.  *Id.*

Here, the ALJ's failure to properly address Jones's borderline age and its impact on the disability determination merits a fee award.  The issue was dispositive.  It is undisputed that if the ALJ had used the higher age category, Jones would have been judged disabled under the grids.[31]  As a result, the other allegations of errors are rendered irrelevant.  *See Stewart*, 561 F.3d at 683-85 (awarding fees under the EAJA where the claimant

---

[31] R&R at 8.

successfully argued that the ALJ wrongly found her not disabled by misapplying the grids, even though the claimant lost on several other claims before the magistrate judge).

*The Commissioner's Litigation Position*

In the Third Circuit, the inquiry ends with our decision that the ALJ's decision was not substantially justified. *Taylor*, 835 F.2d at 1044. Since the ALJ's decision and the federal court litigation must both be substantially justified, a subsequent justified litigation position cannot rescue a prior unjustified ALJ decision. *Smith by Smith v. Bowen*, 867 F.2d 731, 734 (2d Cir. 1989). In other words, if the government's position was not substantially justified at either stage, the prevailing party is entitled to an award of fees and expenses.

Although we determine that Jones is entitled to EAJA fees because of the ALJ's decision, we also address the Commissioner's litigation position. Even if the ALJ's decision were substantially justified, the Commissioner's litigation position was not.[32]

The Commissioner made two arguments to the magistrate judge regarding the borderline age issue. First, he argued that the ALJ complied with *Kane* by using a VE to determine Jones's ability to adjust to new work. The Commissioner claimed that using the VE provided Jones with the "individualized determination" required by *Kane*.

This argument was unjustified on both the facts and the law. *Kane* required the ALJ to consider the borderline situation in his decision and determine whether Jones's age "seriously" or "significantly" impaired his ability to adjust to new work. The fact that the ALJ made no mention of the borderline situation in his decision violated *Kane's* instructions.

---

[32] Some courts have held that, in limited circumstances, a subsequent reasonable litigation might be able to cure an unreasonable ALJ decision. *See Hackett v. Barnhart*, 475 F.3d 1166, 1173-74 (10th Cir. 2007); *CEMS, Inc. v. United States*, 65 Fed. Cl. 473, 483 (2005); *see also Thangaraja v. Gonzales*, 428 F.3d 870, 875 n.1 (9th Cir. 2005) (declining to decide whether a substantially justified litigation can cure an unjustified agency determination).

18

Even if the ALJ were justified in omitting that analysis from his decision, the record shows that he did not use the VE to help determine which age category best described Jones. As the magistrate judge noted, the ALJ asked the VE to assume that Jones was in the "closely approaching advanced age" category.  In short, the ALJ never conducted the inquiry mandated by *Kane*.

Second, the Commissioner relied on HALLEX to argue that the ALJ properly considered all of Jones's vocational limitations and found no reason to use the higher age category.  This argument ignores *Kane's* binding interpretation of §§ 404.1563 and 416.963.   The Commissioner urged the magistrate judge to adopt the HALLEX interpretation of §§ 404.1563 and 416.963 while ignoring that that view conflicted with Third Circuit precedent.  The Commissioner was not substantially justified in persisting in the litigation in the face of binding precedent.  *See Thangaraja v. Gonzales*, 428 F.3d 870, 874-75 (9th Cir. 2005) (holding that the government was not substantially justified where it failed to address the applicability of binding circuit precedent).  Thus, an award of costs and fees under the EAJA is warranted.

*Jones's Fee Request*

Jones seeks fees in the amount of $5,493.25 for the 30.1 hours his attorney spent on the federal court litigation.[33]  This includes the time spent litigating the merits before the magistrate judge and preparing his fee request.[34]  The Supreme Court has held that an

---

[33] Jones does not seek fees for the hours expended in the ALJ proceeding.

[34] Jones does request fees for "any hours which may be expended in the future in litigation of the fee issue."  We understand Jones to be preserving his right to request additional EAJA fees in the future, rather than asking us to presently award fees for an indeterminate number of hours not yet expended.  *See VonBerckefeldt v. Astrue*, No. 09-1927, 2011 WL 5593179, *4 (E.D. Cal. Nov. 16, 2011) (granting in part a claimant's request for additional fees after approving an initial fee request).

EAJA fee award includes compensation for the time spent litigating the prevailing party's entitlement to fees. *Scarborough v. Principi,* 541 U.S. 401, 419 n.6 (2004) (citing *Commissioner, INS v. Jean,* 496 U.S. 154, 160-62, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990)). The district court need not make a separate finding that the government's opposition to the fee petition was not substantially justified. *Id.*

The party seeking attorney's fees must show that the number of hours listed in its request is reasonable. *See* 28 U.S.C. § 2412(b) (allowing the court to award "reasonable" fees); *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Johnson*, 416 F.3d at 213-14. That party must make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The hours listed in Jones's fees petition appear reasonable, and the government does not challenge them. Additionally, we find that Jones is entitled to his requested hourly rate of $182.50.[35]

Although Jones only prevailed on one of his three claims before the magistrate judge, he is entitled to full compensation. Although a claimant is not entitled to fees for a portion of the litigation in which he obtained no favorable results, he may recover for "unsuccessful claims [that] were submitted as alternative grounds for a successful outcome that the plaintiff did actually achieve." *Anthony v. Sullivan*, 982 F.2d 586, 589 (D.C. Cir. 1993) (citing *Hensley*, 461 U.S. at 435). Jones presented the three claims as alternative

---

[35] The EAJA states that the fees award shall not exceed the statutory cap of $125 per hour "unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A); *see also Johnson*, 416 F.3d at 213. Jones argues that the increased cost of living from March 1996 (when the cap was set) to December 2011 (the date of our judgment order) warrants a fee of $ 182.50. Based on the Consumer Price Index ("CPI-ALL"), *see Dewalt v. Sullivan*, 963 F.2d 27, 29 (3d Cir. 1992); *Garcia v. Schweiker,* 829 F.2d 396, 401 (3d Cir. 1987); *Allen v. Bowen,* 821 F.2d 963, 967-68 (3d Cir. 1987); *Natural Res. Def. Council, Inc. v. U.S. EPA.,* 703 F.2d 700, 713 (3d Cir. 1983), we determine that Jones is entitled to his requested rate.

grounds for remand.   His success on the borderline situation issue alone warranted remand.   Therefore, Jones is entitled to fees for the 30.1 hours he claims.

## Conclusion

The Commissioner has failed to show that his position was "substantially justified." The ALJ was not justified in disregarding Third Circuit precedent, and the Commissioner was not justified in defending the ALJ's decision.   Therefore, we shall grant Jones's motion for fees under the EAJA.